LAW OFFICES OF
JARED M. LEFKOWITZ
1001 Avenue of the Americas, Suite 1114
New York, NY 10018
(212) 682-1440
JML@JMLefkowitzLaw.com
Attorney for Plaintiff Dorian Tracey

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DORIAN TRACEY,                                         Case No. 17cv5894

       Plaintiff,

  - against -

JETBLUE AIRWAYS CORPORATION, and
DONALD USELMAN,                                        **COMPLAINT**

       Defendants.                             JURY TRIAL DEMANDED
-----------------------------------------------------------------X

    Plaintiff, by and through his counsel Jared M. Lefkowitz, as and for his Complaint against the above named defendants alleges as follows:

    1. This is an action under the Americans with Disabilities Act ("ADA") 42 USC §12101 *et seq.*, the New York State Human Rights Law §290 *et seq.*, and the New York City Administrative Code §8-101 *et seq.* to recover for employment discrimination based upon disability and/or perceived disability.

    2. As described below, plaintiff was employed at defendant JetBlue for approximately 12 years with no negative performance issues in that time, he was promoted three times during that span, but was thereafter fired less than one year after being diagnosed and beginning to display the physical effects of Parkinson's disease.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is an individual residing in Kings County and is a "Qualified Individual" under the ADA.

4. Upon information and belief defendant JetBlue Airways Corporation ("JetBlue") is a "Covered Entity" and an "Employer" under the ADA, it is corporation with business addresses all over the world, the United States, and in Long Island City, New York within the Eastern District of New York.

5. Defendant Donald Uselman is an individual who was plaintiff's General Manager while working at defendant JetBlue, and who upon information and belief lives and works in the Eastern District of New York.

6. Upon information and belief defendant Uselman made the decision not to promote plaintiff, unlawfully questioned plaintiff about his medical condition, and made the decision terminating plaintiff's employment.

7. This Court has original subject mater jurisdiction based upon the Americans with Disabilities Act, 42 USC §12101 *et seq.*, and supplemental jurisdiction pursuant to 28 USC §1367.

8. Venue is proper in the Eastern District in that the parties reside in the Eastern District of New York and the employment took place in the Eastern District.

9. Plaintiff filed a Charge with the EEOC and a Right to Sue letter was issued dated July 19, 2017.

## FACTS APPLICABLE TO ALL COUNTS

10. Plaintiff began employment with defendant in or about 2003 as an Airport Operations Crewmember.

11. In 2004 plaintiff was promoted to Airport Operations(AO) Flight Coordinator.

12. In 2005 plaintiff was promoted to AO Lead.

13. In 2006 plaintiff became an Acting Supervisor, and then a Supervisor in 2007.

14. From 2003 throughout most of 2015 plaintiff worked for defendant in good standing with no complaints about plaintiff's performance.  During that span plaintiff received periodic bonuses (consisting either of cash or stock options) and increases in salary.

15. That all changed in approximately November 2015 after plaintiff was diagnosed with Parkinson's disease.

16. Although plaintiff's medical condition in no way compromised or negatively affected in any way plaintiff's ability to perform his job, there are physical symptoms which began to be noticeable.

17. When plaintiff's physical symptoms first manifested themselves defendant Uselman on several occasions called on plaintiff to attend one on one meetings in order to prod him and ask questions about his physical condition.

18. At one such meeting, after continued harassment by Mr. Uselman as to his physical condition, plaintiff broke down and advised Mr. Uselman that he had been diagnosed with Parkinson's disease.

19. At a later meeting, Mr. Uselman asked plaintiff what medications plaintiff was taking and Uselman researched those medications on his computer right in front of plaintiff while plaintiff was still in his office.

20. Mr. Uselman then cross examined plaintiff about the medications and what side effects plaintiff was experiencing, and would discuss those side effects with plaintiff as if he were plaintiff's physician.

21. During those meetings with plaintiff Uselman made comments such as: "is the job too strenuous for you?" and "does it get any worse when it is aggravated by customers?"

22. In January 2016, approximately two months after Uselman learned of plaintiff's condition, the responsibility of Baggage Service Officer Supervisor was removed from plaintiff by Uselman.

23. The following month Uselman began excluding plaintiff from the decision-making process at plaintiff's gate.

24. In March 2016 plaintiff applied for the position of Manager of Airport Operations for which plaintiff is qualified.

25. When plaintiff never received confirmation that his application had been received plaintiff asked Mr. Uselman about it. Uselman's reply was "don't worry about it."

26. The following week plaintiff approached Uselman again about his application for Manager of Airport Operations and plaintiff was told by Uselman that the application period for the position was now closed, the job had been given to someone else, and Uselman falsely stated that plaintiff had never applied for it.

27. Uselman continued to prod plaintiff about his medical condition. Uselman would ask pointed questions about the types of medications plaintiff was using, the doses, and he would make frequent statements referring to Uselman's perception of the side effects of plaintiff's medication such as: "oh, that's why you don't smile much."

28. Uselman also continued to frequently ask questions about whether plaintiff was able to do his job such as: "can you still handle the rigors?" and "is the walking up and down too much for you?"

29. Such conduct by Uselman, and the gradual diminishment of plaintiff's responsibilities, culminated in the fabrication of pre-textual charges against plaintiff for insubordination in May 2016 and plaintiff's discriminatory termination in June 2016.

30. At the time of his termination plaintiff's annual compensation including salary and bonus was approximately $70,000.

31. Plaintiff had at all times performed his duties working for defendant diligently and competently.

32. Plaintiff is disabled or was regarded as disabled by defendant and the failure to promote him, the constant queries about his condition, and his discharge were illegal or improper due to disability or perceived disability discrimination.

17. Plaintiff is qualified for the position and with or without reasonable accommodation could perform the essential elements of the job.

**FIRST COUNT**

18. For the reasons alleged above Defendant failed to promote plaintiff, unlawfully inquired as to plaintiff's medical condition, terminated plaintiff's employment, and discriminated against plaintiff in violation of the Americans with Disabilities Act.

33. Plaintiff seeks damages in excess of $1,000,000 consisting of lost wages, future earnings, raises, bonuses, gratuities, other benefits he would have received, attorneys fees, punitive damages, and any other damages available under the statute(s).

**SECOND COUNT**

34. For the reasons alleged above Defendant failed to promote plaintiff, unlawfully inquired as to plaintiff's medical condition, terminated plaintiff's employment, and discriminated against plaintiff in violation of the New York State Human Rights Law §290 *et seq*.

19. Plaintiff seeks damages in excess of $1,000,000 consisting of lost wages, future earnings, raises, bonuses, gratuities, other benefits he would have received, attorneys fees, punitive damages, and any other damages available under the statute(s).

**THIRD COUNT**

20. For the reasons alleged above Defendant failed to promote plaintiff, unlawfully inquired as to plaintiff's medical condition, terminated plaintiff's employment, and discriminated against plaintiff in violation of the New York City Administrative Code §8-101 *et seq*.

23. Plaintiff seeks damages in excess of $1,000,000 consisting of lost wages, future earnings, raises, bonuses, gratuities, other benefits he would have received, attorneys fees, punitive damages, and any other damages available under the statute(s).

**WHEREFORE**, plaintiff demands judgment as follows:

A. On the first count, damages in excess of $1,000,000 consisting of lost wages, future earnings, raises, bonuses, gratuities, other benefits he would have received, attorneys fees, punitive damages, and any other damages available under the statute(s);

B. On the second count, damages in excess of $1,000,000 consisting of lost wages, future earnings, raises, bonuses, gratuities, other benefits he would have received, attorneys fees, punitive damages, and any other damages available under the statute(s);

C. On the third count, damages in excess of $1,000,000 consisting of lost wages, future earnings, raises, bonuses, gratuities, other benefits he would have received, attorneys fees, punitive damages, and any other damages available under the statute(s); and

D. Such other and further relief as this Court deems just and proper.

Dated: New York, NY
October 9, 2017

                                               LAW OFFICES OF
                                               JARED M. LEFKOWITZ

                                               By____/S/_____
                                               Jared M. Lefkowitz
                                               1001 Avenue of the Americas, Suite 1114
                                               New York, NY 10018
                                               Tel (212) 682-1440
                                               JML@JMLefkowitzLaw.com
                                               *Attorney for Plaintiff Dorian Tracey*